v. Collins v. Felder, et al. Ken Votri, Jr. Good morning, Your Honors. Roberts, Jr. Good morning. Ken Votri, Jr. My name is Ken Votri, and I represent the Plaintiff Appellant in this case. This case arises out of a malpractice action against a law firm, a few law firms, that is under New York State law, but is in the Federal court due to diversity jurisdiction. Roberts, Jr. Who is the injured party here? Is Mr. Collins the injured party or is the corporation the injured party? Ken Votri, Jr. Mr. Collins is the injured party. Roberts, Jr. A stockholder in a corporation. Ken Votri, Jr. He is a stockholder in a corporation. Roberts, Jr. Not his assets. It's the corporation's assets, isn't it? Ken Votri, Jr. It is both he and the corporation. Roberts, Jr. How does he have standing to bring the claim? Ken Votri, Jr. He has standing, Your Honor, because he claimed personal damages. Roberts, Jr. Does he comply with the derivative action under New York law? Ken Votri, Jr. I don't believe it's a derivative action, Your Honor. Roberts, Jr. Why is it not a derivative action? Ken Votri, Jr. He's claiming damages that were personal to him as a result of fraudulent conduct. the corporation. Roberts, Jr. In addition to the profits of the corporation? Ken Votri, Jr. The complaint says it was derivative and individual, right? Roberts, Jr. It does say it's both, yes. Ken Votri, Jr. But you're denying that it's derivative now? Roberts, Jr. I'm not denying it's derivative, but he has standing because he has personal damages as a result of the cause of action, and there was a claim that he had against lawyers representing him personally in the arbitration. The corporation wasn't even a party to the arbitration below. And while that might be a factual argument that could be raised in terms of evidence, he's making a claim that he was personally represented by these attorneys. Ken Votri, Jr. Wait. The arbitration below, the complaint says Collins and Raines brought a civil action individually and derivatively, so it's a derivative action. Roberts, Jr. Yes, you've corrected me, yes, Your Honor. Ken Votri, Jr. Okay. Roberts, Jr. But he has standing as an individual because he's claiming personal damages to himself, including the... Ken Votri, Jr. So what? Roberts, Jr. One, damages relating to the tax issues that arose from the company that he acquired personal liability for and personal risk for because of the employment taxes that weren't paid by the firm. And in this case... Ken Votri, Jr. I'll give you the taxes, but what about lost profits, things like that? Roberts, Jr. The lost profits, I think you can argue, is within the derivative. I'm trying... Ken Votri, Jr. I don't think you're arguing. I think they squarely are within the corporation. I don't know how you argue that at all. Roberts, Jr. Let me explain. And I've done, for better or worse, legal malpractice work before, and this is kind of a touchy area because you have both the corporation and you have the individual. Things came out of it that were personal to Mr. Collins. There's no question about that. And things could be arguably related to the corporation. He brought a claim in his personal capacity, and it was lawyers he hired and paid for in his personal capacity. And that's who the malpractice claim is against. And what occurred, and this is kind of, we'll segue into this to some extent, the district courts seem to be most concerned with the proximate cause test. And in New York, of course, it's the but-for test that you have to establish proximate cause. And I'll actually, to maybe compare them, I do these actions in Connecticut also, where we have a much looser test, I think, in terms of proximate cause. We satisfy that test here, and I think we do. Because in this case, the court kind of went off in a direction based on this issue that the arbitrator found fraud among all the partners in the corporation. That's what we're suing in terms of the malpractice. In terms of Mr. Peter Collins, what his claim is is that because of the malpractice, that finding took place. And so when you look at the testimony, did he not admit during the arbitration proceedings that he was aware of and in on the tax avoidance scheme? I believe the testimony was less clear than that. There were different questions that led him in different directions. I think he testified poorly at the arbitration. And I think you can equally find things in the transcript in the arbitration that go the other way. The arbitrators concluded that he was in on it. Absolutely. And it sounds like there's at least some support for that finding. Well, there is support for that. Yeah. Let's maybe put it in the case of a courtside case, that there is any evidence that might support that. There might be evidence that supports a contrary finding also. The malpractice that we're complaining about is that part of the case wasn't handled correctly. So if you take the defendant's case, you could never bring a malpractice case for a bad result in litigation because that's race judicata. If the client makes admissions that are fatal to his claim, it's kind of hard to say that the lawyer is at fault for letting him make those admissions under oath, right? And we're not saying that, Your Honor. That is a difficult argument. But he admitted under oath that he, in fact, used the company as a personal Everybody was doing cash transactions to avoid paying taxes, right? There was testimony concerning whether or not the parties knew that there were cash transactions taking place, Your Honor. There was testimony from Mr. Collins. From Mr. Collins and from the other parties. Was it your contention that the lawyer should have prevented him from saying that and that was malpractice? No, the lawyer should have prepared him better so he understood what he was answering questions to and how he was answering them. And I'll put it to you this way. It's funny. As a litigator, I'm a litigator that for some reason got an LLM in tax. I think I've gotten well beyond that. But I understand enough that when you're in a situation about how a closely held corporation handles its finances, most of the time the individual partners don't quite understand the concept of what they're doing and what they're not doing. Was Mr. Collins testified truthfully when he said that he was in on the tax avoidance? I don't believe that Mr. Collins lied anywhere during the arbitration. Okay. He tried to answer the questions to the best of his ability. And so what could the lawyers have done differently to prevent that testimony, that truthful testimony, from coming out? Well, Your Honors, in terms of how testimony comes out, when testing, this is the argument I made a moment ago about tax law and how it applies. It's very easy to say something and not understand what you're meaning within the context of what the tax law permits or doesn't permit. And in terms of understanding, for example, that maybe your partners are taking cash transactions and there's cash transactions. Cash transactions are perfectly legal as long as they're reported correctly. And that's the mess that folks in closely held businesses get into. That's an argument that could have been made to the arbitrators or in appealing the arbitration, right? But that wasn't done. It could have been made to the arbitrators, but the argument wasn't made to the arbitrators. And that's why the arbitration is the key to the malpractice case. Had it been handled properly, that could have been dealt with. But wait. It wasn't. Mr. Collins withdrew the appeal of the arbitration award, right? The application to vacate. Yeah, right. It can't appeal. You vacate. Yeah, exactly. Yes. It's my understanding, yes. All right. So you're not blaming that on the lawyers, right? No, I did not raise an issue about the application to vacate in the documents. Let's stick with the tax return. Yeah. Your allegation as to tax return was that his lawyers didn't hire a forensic accountant to correctly or appropriately analyze the tax returns, right? That's correct. But what you didn't allege is what they would have found. I mean, that's what, to me, makes this different from Rubens and some of the other cases. And that's where the proximate cause issue comes into effect. Because most malpractice cases will say if the lawyer had done X, the lawyer would have discovered Y. In Rubens it said if they had hired an appropriate expert, they would have discovered that it was the possibility of a false positive. And they made that allegation. And where in the complaint do you allege what it is would have been discovered had an appropriate, not you personally, but that a forensic accountant would have discovered from the tax returns? I believe there's an allegation in the complaint that talks about the fact that after the fact, the forensic accountant did look at the documents. He did not reach a conclusion on it at that point. But there was testimony from, sorry. So that's the problem. I mean, it's like a doctor saying, I can't reach a conclusion whether the person did or didn't have cancer. And so I have a hard time. Then you say to yourself, I have a hard time understanding if this is a misdiagnosis case. You know, as to medical malpractice. I have a hard time understanding if this is a breach of contract. And so I have a hard time. So did the lawyer blow a breach of contract claim? You have to connect the lawyer's negligence to the plaintiff's injury. And that's the problem here. There's no bridge. I think the complaint alleges a bridge. And what is it? It doesn't allege. What is it? What is it that the forensic accountant would have said to Mr. Collins? Mr. Collins, they stole from you. They stole money from you. That's what you're alleging. He would have known. But you didn't allege. That's what you're saying they would have discovered. But there's nothing in the complaint that alleges that. Well, we do allege, Your Honors. There's a discussion in the complaint concerning unreported cash that was not paid to him. You just told me that the forensic accountant couldn't reach a conclusion. And if my accountant can't reach a conclusion, I get a little nervous about my tax return. Well, Your Honors, you realize this is a malpractice case that was in the beginnings because we haven't even disclosed the explanation. It was a complaint. I understand what a complaint is. And we're on a complaint standard. I don't need to argue that. A complaint, nonetheless, has to connect the negligence to the injury. And it has to say, had the lawyer, Don, hired a forensic accountant, the forensic accountant would have discovered that money was stolen from the corporation by the other shareholders. Give me just one second here. You can tell me on your rebuttal if you want. No, I can't. I don't want to waste my time on this. But I'll draw your attention to page 8 and 9 of the complaint. We'll look at that. Page 89? 8 and 9 of the amended complaint. Thank you. You've saved some time for rebuttal. Oh, wow. Yes, thank you. Thank you. Good morning, Your Honors. Good morning. Dan Hertow with the law firm of Nixon Peabody. I represent some of the attorneys in this case. They're the appellees. I represent the law firm of Felder and Partners P.C., Raul Felder, and Daniel Notes. For my clients in particular, there is a timing problem with the allegations that are made, assuming that there's any validity to them in the first place. But for my clients in particular, they left the representation of Mr. Collins on November 13th of 2013. The arbitration itself did not happen until some four months later. And the knowledge that Reddy and Curran had gone off to the IRS and had put together an amended tax return, that was not even known to the parties, to Collins and Rines, until November 1st. So there were only 13 days where the Felder attorneys even knew that there was any issues with this amended tax return. Right. But that's not the grounds on which Judge Stanton ruled in your favor, right? Well, I mean, ultimately, he's saying . . . He went off on proximate cause. That's correct. He's saying . . . You're really asking us to not rely on proximate cause or rely on a different theory of proximate cause. No, not a different theory at all. I mean, it is absolutely proximate cause because . . . Well, it's a timing issue. It's a timing issue, but it goes to proximate cause because you cannot . . . But it's not one that the judge below made. No, he did not specifically get into that issue. I'm pointing that out as something peculiar or a little bit different for my clients, which I pointed out in my brief, which is that, you know, to make that connection to proximate cause, you've got to say that someone did something, but for what they did or did not do, caused you some sort of damage. My clients . . . Do you have any issue with respect to standing? Are you concerned about the standing? You know, we raised that in our brief. We also raised it below. Mr. Rimes also brought an action in State court against my clients, and we argued their same issue. It was a malpractice claim. All the same issues were argued. Judge Sherwood decided that case. So between us making our argument and Judge Sherwood deciding the issue, we did argue standing there. Judge Sherwood felt that because there were some arguments made by my clients, that they were individual as well as derivative claims, that there was standing in that particular case. Well, the complaint says that Collins and Rimes brought a civil action individually and derivatively. That's correct. So individually would seem to give them standing. That's correct. All right. So you're not really challenging standing. That's correct. I'm saying between the time I put that argument in my brief, Judge Sherwood went the other way, and I'm not going to disagree with Judge Sherwood on that point. Our argument here is proximate cause and also collateral estoppel. I'm splitting my time, and I know my – I actually have a couple more minutes. So, yes, I mean, it goes directly to proximate cause, and essentially that is what this case is about, which is whether or not there is a connection between what my clients did and whether or not there are any damages. And, again, we say that there are not any connections in this particular case. It was the finding of the court, I mean, the arbitration panel, that the issue there was, as you've pointed out, the tax issues. The tax issues were not anything that my clients even knew enough to deal with. Some of the issues they claimed that the Felder clients, my Felder clients were responsible for, had to do with things that happened well before anyone even knew about that issue. For example, they claimed that there wasn't appropriate selection of the arbitrators. That's really not even an issue because my client didn't select the arbitrator. The arbitrators were selected by the AAA. There's a process for putting input in, but then the arbitrators are selected by the AAA. Again, all of the various issues that they claim we had something to do with were all before the arbitration actually happened. If you look at the reply papers and if you look at the argument that was made today, really what they're complaining about is what happened at the arbitration, and my clients did not represent Mr. Kahn at the arbitration. Thank you very much. Thank you. Good morning, Your Honors. Good morning. My name is Jake Bedore. I'm an associate with Louis Brisbois, Bisgarden, Smith, attorneys for Attorney Howard Benjamin. We were also one of the attorneys who represented Mr. Collins during the arbitration. In terms of proximate cause, plaintiffs had a number of opportunities at this stage to demonstrate proximate cause. They filed a complaint. They filed an amended complaint. They filed a motion for reconsideration, and they filed the instant appeal. And, Your Honors, hit the issue exactly on the head. In none of those papers have they ever explained how my client's conduct proximately caused their damages. In particular, they're focused on these amended tax returns. However, there are no allegations as to what in the amended tax returns would have changed the ultimate result of the arbitration. The arbitrators found the plaintiff committed tax fraud, and based upon that tax fraud, they found that none of the shareholders had acted in bad faith with respect to each other, but rather with respect to the corporation. Because of that, there are no damages to plaintiff. The only damages were to the corporation. And so, based on that, the arbitrator found that there were no, as I said, there were no damages to the corporation. Put simply, based on that finding, there can be no finding that my client committed malpractice. It was plaintiff's own misconduct, not my client's conduct, that caused the result that he does not like. And he's now gone on a longstanding campaign to attack this result that he did not like, that was based on his own testimony, and has pointed fingers at just about everybody, including all of his prior lawyers, to try to get out of this ruling. That is not a valid ground for legal malpractice action. That's a client who's unhappy with the result based on his own malfeasance and going ahead and attacking everybody but himself based on that finding. If the Court has no further questions. I'm just curious, if the malfeasance was not equally distributed among the four partners, in other words, one is guilty of pocketing 5% of the value of the company and the others between them do 95%, would that be a basis for an individual claim against the other malfeasant partners? Well, that was not what was found in this instance. There's a direct quote from the arbitrator which said that each of the parties were acting not in bad faith towards each other, but towards the corporation. So I don't think that that's a question that needs to be addressed here because that's frankly not what the arbitrator found. But his claim against Reedy was that Reedy amended the returns to hide income. Reedy took that behind expenses that were false. Isn't that really what his theory was as to Reedy and that? And, I mean, I still have problems with the, and I'm sure I'm going to have a conversation in the rebuttal about it. But, I mean, his theory as to Reedy was that the amended tax return was fraudulent and not in the context vis-a-vis the corporation but vis-a-vis him because it attributed expenses that Reedy was identifying and therefore sheltering money that Reedy had taken much to Collins' loss and then Collins was made to disproportionately shoulder a burden of income tax that he never, ever appreciated. Well, in terms of that income tax issue, that frankly is not something that would have been decided in the underlying arbitration or in this case. That's a tax issue. But what the complaint fails to identify. Okay. So your initial answer is that that's what the arbitrator, the arbitrators weren't looking at that? Yeah. Well, the arbitrators were not looking at the credibility of the tax returns when they even came to their conclusion. So the idea that somehow pointing out these issues with the tax return would have altered the arbitration panel's conclusions is just a false one. He's pointing, the plaintiff is pointing at these tax returns, reviewing them with a fine-toothed comb and finding issues that he believes that the tax returns had. However, if you review the arbitrator's decision, it doesn't really rely on the tax returns. What it relies on was plaintiff's conduct or misconduct as a manager of the corporation. It refers to maintaining two sets of books, which he acknowledges existed. It refers to the use of cash in envelopes to pay off employers and independent contractors. It doesn't refer or very, very briefly refers to the tax returns. The tax returns, simply put, were not the cause of the adverse decision. It was plaintiff's misconduct. If the Court has no further questions, I'm happy to take a seat and allow for a rebuttal. Thank you. We'll hear the rebuttal. Thank you. Let me try to answer the question we started with in the beginning. First of all, let me preface it as this. It's not a summary judgment motion, and some of the arguments I hear from the defendants are arguing the case, and they may be wonderful arguments in the case, but we're dealing only with the motion to dismiss and whether or not there is enough of a scent of a case that it should survive a motion to dismiss. If you look at my complaint, and I gave you the wrong pages. If you go to page 6 in paragraph 52. Are you talking about the appendix now? Yes. So tell me the appendix. A62 is the page. That's where I was before. Perfect. Okay. Thank you. Thank God my office put the bait stamping on my copies also. But at any rate, if you look at paragraph 52, in the context of whether we have a complaint under which we can prove facts which would allow us to prevail in the case, what paragraph 52 says is that they didn't get an expert, they didn't review the tax returns, and here are the things they would have found. You're right. It doesn't say Mr. Jones is going to testify to this, but in terms of the allegations, we allege specific inaccuracies that would have been discovered had the financial expert been retained. But none of those inaccuracies would nullify the fact that your client admitted to improperly using the company's assets as his own, right? Well, Your Honor, I mean, in the abstract, no, it won't. I mean, obviously, I'm answering one question about the pleading. If I want to address the issue of whether there's another cause. In dismissing your complaint, Judge Stanton said that you didn't plead facts that would demonstrate that but for the malpractice of defendants, you would have prevailed or reached a different outcome in the arbitration. So it seems to me that since the arbitration turned on the fact that your client made certain admissions, what about the pleadings would have nullified those admissions? Well, in, I believe it's the reply brief, there's a quote from the arbitrator where the arbitrator says that the point of the arbitration is were those tax returns accurate or not accurate as they were amended. We took the position that they were not. And below, the attorneys never retained or utilized expert testimony to determine whether they were accurate. These issues that we've raised would have changed the outcome of the case because it would have disproven the issue of fraud. So, one, there were financial, there were financial findings based on those tax returns that were left unchallenged, which would have changed things. Your Honor, and here's the thing. I can't tell you as I stand here whether it would change it by 95 percent, 50 percent or 100 percent, but it would have changed the findings. And the way you prove that in a malpractice case is with expert testimony. So, what were your client's injuries as a result of the plaintiff's name, the defendant's name? Well, if you look at paragraph 52, it outlines them, including the 200. His claim there is that he paid too much tax, not that someone stole from him. Well, no. He says there was $800,000 in shareholder salary shift pay commissions that were incorrectly  That would have created a tax result which would have reduced his I'm reading from sub I that plaintiff was required to pay a large sum of tax plus penalties and interest because of the amended tax returns. The amended tax returns were inaccurate and not credible. Reddy purposely amended the returns to transfer his personal income tax obligations to the plaintiff, resulting in erroneous tax liability. That's his injury, right? In addition, if you go to the next page and you go to L, Reddy had taxable wages actually which were shown as paid to other shareholders. So there was also money that went to Reddy that was reported as going to the other shareholders and that would throw off the distributions from the company. The K-1 showed monies received by other shareholders of Gaslight beyond those equal to distributions by checks. There was money missing. There was money that was not reported, that showed up on a K-1 that was not reported to them. And the issue submitted to the arbitrators was what? Well, the issue dealt with the fraud that was a claim against Reddy and the other partner. But Reddy and the other party, Reese, had committed fraud, whoever the other party was, there were four of them, had committed fraud and the arbitrator said, well, you all did it. Right? That's what the arbitrator said. And your client admits to that. Well, he didn't admit the fraud. He admitted that there were cash payments. What he asked his lawyers to do and what became the issue is that amended return, the amended returns became the now official report of the income and distributions of this company. The law firm did not challenge that. And those pointed the finger at all the partners, including Collins. Collins could have defended against that with the use of an appropriate expert to restructure this. Now, I do understand that the report of it came up suddenly, but, you know, it was during the arbitration had begun and they had decided to voluntarily file those returns. Thank you. Thank you. We'll reserve the session.